UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ETHEL MAY,

                        Plaintiff,

              V.

MICHAEL V. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____

**REPORT AND
RECOMMENDATION**

09-CV-331
(LEK/VEB)

## I. INTRODUCTION

In February and October of 2005, Plaintiff Ethel May filed applications for supplemental security income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since July 15, 2000, due to mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, through her attorney, Peter W. Antonowicz, Esq., commenced this action on March 23, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 8, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff filed an application for SSI benefits on February 14, 2005. (T at 33).[1]  That application was denied initially. (T at 33).  Plaintiff filed another application on October 19, 2005, which was denied initially (T at 33) and on reconsideration. (T at 35-37).  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  On November 13, 2007, Plaintiff appeared with her attorney at a hearing before ALJ Elizabeth Koennecke in Syracuse, New York. (T at 373).  On June 12, 2008, ALJ Koennecke issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (T at 19-32).  The ALJ's decision became the Commissioner's final decision on January 30, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 6-8).

Plaintiff, through counsel, timely commenced this action on March 23, 2009. (Docket No. 1).  The Commissioner interposed an Answer on July 7, 2009. (Docket No. 8). Plaintiff filed a supporting Brief on September 22, 2009. (Docket No. 11).   The Commissioner filed a Brief in opposition on November 3, 2009. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied and that this case be remanded for further proceedings.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff had never engaged in substantial gainful activity. (T at 21).  She concluded that Plaintiff had the following impairments considered "severe" under the Act: mood disorder, low average intelligence, and polysubstance dependence. (T at 21).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 25).  The ALJ determined that Plaintiff retains the physical residual functional capacity to perform a full range of work at all exertional levels. (T at 27).  Mentally, the ALJ found that Plaintiff retained the ability (on a sustained basis) to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. (T at 27).  Plaintiff had no past relevant work. (T at 30).  The ALJ determined that considering Plaintiff's age (27),

5

education (limited), work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 31). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act.  (T at 32).  As noted above, the ALJ's decision became the Commissioner's final decision on January 30, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 6-8).

> **2.    Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  Specifically, she offers the following three (3) arguments.  First, Plaintiff asserts that the ALJ should have found that the mental impairments meet or medically equal the impairment listed in §12.04 and §112.04 of the Listings.  Second, Plaintiff contends that the ALJ's assessment is not supported by substantial evidence.  Third and finally, Plaintiff argues that the ALJ did not properly account for the limitations imposed by her mental impairments.

> **a.    The Listings:**

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a

Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria for the impairment set forth in the Listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify.  Sullivan, 493 U.S. at 530.  To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B).  Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

In this case, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 25).  Plaintiff challenges this finding, arguing that her mental impairments meet or medically equal the impairments set forth in §12.04 and §112.04 of the Listings.

### i.  Section 112.04

Section 112.04 of the Listings applies only to children under the age of eighteen (18).  20 C.F.R. Part 404, Subpart P, Appendix 1, Part B.  Plaintiff was twenty-one on July 15, 2000, the alleged onset date, and her impairments are therefore not subject to review

7

under the childhood disability standards. (T at 60). Moreover, Plaintiff has not applied for benefits as a disabled adult child or demonstrated her entitlement to such benefits.[4] As such, §112.04 does not apply.

### ii.    Section 12.04

To establish that her impairments meet or equal § 12.04 of the Listings (Affective Disorders), Plaintiff must first satisfy one of the threshold criteria set forth in Subsection (A) of the impairment descriptions.  This typically involves proof of a medically determined mental impairment, combined with evidence of some definite limitation caused by that impairment.

If Plaintiff falls within the threshold parameters of Subsection (A), the inquiry turns to Subsection (B) of § 12.04 to determine whether her "mental impairments result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked restrictions in social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration." Paratore v. Comm'r of Social Security Admin., No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).[5]

---

[4]A claimant may be entitled to benefits as a disabled adult child if he or she was dependent on a insured person who was entitled to old-age or disability benefits, that person died, the claimant is unmarried, over eighteen (18), but has a disability that began before age twenty-two (22). 20 C.F.R. § 404.350.

[5]Under § 12.04 (C), a claimant would automatically meet the Listing if there was documented evidence of any of the following: "(1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." § 12.04 (C).  However, Plaintiff does not assert that any of these factors are present in this case.  As such, subsection (C) of § 12.04 is not at issue.

In this case, the ALJ found that Plaintiff did suffer from a mentally determinable mental impairment (mood disorder).  The ALJ further determined that the impairment was severe.  This satisfies Subsection (A) of the Listing.

Thus, the key inquiry is the effect Plaintiff's impairment has with regard to the Subsection (B) criteria.  Plaintiff will only be disabled if her impairment results in marked restrictions at least two of the specified areas, sufficient to preclude her from performing basic work activities.  See Armstrong v. Comm 'r of Social Sec., No. 05-CV-1285, 2008 WL 2224943, at * 12 (N.D.N.Y. May 27, 2008) (holding that even if the ALJ had determined that the plaintiff's depression was a medically determinable impairment, substantial evidence must exist to support a conclusion that the condition was severe and precluded the plaintiff from doing basic work activities).

Plaintiff argues that she meets the Subsection (B) criteria.  To that end, she points to the assessment of Dr. Flocerfide de Jesus, her treating psychiatrist.  On April 16, 2007, Dr. de Jesus completed an Affective Disorders Questionnaire, in which he opined (by checking off items on the questionnaire) that Plaintiff had marked restriction of daily activities, marked difficulties in maintaining social functioning, difficulties in concentration or pace resulting in frequent failure to complete tasks, and experienced repeated episodes of deterioration or decompensation in work or work-like situations. (T at 351).  Dr. de Jesus also indicated on several occasions that he did not believe Plaintiff was capable of any work activity. (T at 313, 314, 317).  Plaintiff also points to evidence indicating that she had difficulties with regard to social interaction during high school. (T at 147-151, 264-67).  However, this evidence pre-dates the alleged onset date and is therefore of questionable probity.

The ALJ concluded that Plaintiff did not satisfy the Subsection (B) criteria set forth in §12.04.  This Court finds that the ALJ's decision was supported by substantial evidence.  The ALJ was obliged to give controlling weight to Dr. deJesus's assessment as treating psychiatrist only to the extent that Dr. deJesus's "opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).

Here, Dr. de Jesus's assessment was contradicted by several other pieces of evidence in the record, including the findings of examining and non-examining medical consultants.  Dr. Dennis M. Noia conducted a psychiatric consultative examination in January 2006.  Dr. Noia described Plaintiff's demeanor and responsiveness to questions as "cooperative," her manner of relating, social skills, and overall presentation were noted to be "moderately adequate." (T at 320-21).  Attention and concentration were intact, with only mild impairment as to recent and remote memory. (T at 321).  Intellectual functioning was found to be in the borderline range. (T at 321).  Plaintiff was noted to be capable of self-care and was described as "sometimes" getting along with family and friends. (T at 321).  Dr. Noia opined that Plaintiff appeared to be capable of understanding and following simple instructions and directions. (T at 322).  She appeared to be capable of performing simple and some complex tasks with supervision and independently. (T at 322).  Plaintiff likewise appeared to be capable of maintaining attention and concentration, attending to a routine, maintaining a schedule, and making appropriate decisions. (T at 322).  Dr. Noia found Plaintiff able to relate to and interact moderately well with others, although she

appeared to have some difficulty dealing with stress. (T at 322).

Dr. John F. Harkulich completed a psychological assessment in June of 2005, in which he assessed that Plaintiff had a performance IQ of 73, verbal IQ of 72, and full scale IQ of 70, which was in the "marginally average range of cognitive and intellectual abilities." (T at 280). Although Plaintiff was noted to have poor reading and writing abilities, Dr. Harkulich opined that she would "competently complete simple assembly tasks," albeit slowly. (T at 281). Dr. Harkulich indicated that Plaintiff could "perform many daily living activities such [as] cooking, light housekeeping and laundry." (T at 281). She was able to use public transportation, but had problems managing money. (T at 281).

Dr. Jeanne Shapiro conducted a psychiatric consultative examination on April 27, 2005. Dr. Shapiro found Plaintiff cooperative, with an "adequate" manner of relating and social skills. (T at 231). In addition, Dr. Shapiro made the following findings: thought processes were coherent, attention and concentration intact, intellectual functioning in the deficient range. (T at 232). Dr. Shapiro noted that Plaintiff was able to attend to activities of daily living and use public transportation, although Plaintiff had difficulty managing money. (T at 232). Vocationally, Dr. Shapiro found that Plaintiff was able to understand and follow simple directions and instructions; she could maintain attention and concentration for tasks; she can regularly attend to a routine and maintain a schedule. (T at 232). Plaintiff was capable of dealing with moderate stress and could interact with others, but possibly not on a consistent basis. (T at 232). Dr. Shapiro indicated that Plaintiff's prognosis was "good" and described her as a good candidate for vocational assessment and training following treatment. (T at 232).

Further support for the ALJ's assessment is found in the opinions provided by the

State Agency review consultants, all of whom indicated that Plaintiff had only mild or moderate limitations as to the Subsection (B) criteria. (T at 244, 254-56, 343, 347-49).  It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

The ALJ also noted that the questionnaire completed by Dr. deJesus suffered from several flaws.  First, it only had a "checkoff" for marked limitations as to daily activities and social functioning.  (T at 351).  In other words, the form did not give an option for "mild" or "moderate" limitations and thus seemed designed to elicit one of two answers: either no limitation or mark limitation.  The ALJ reasonably suspected that the form was designed to obtain a desired response.[6]  Second, although the questionnaire indicated that Plaintiff had

---

[6]The record does not identify the source of the questionnaire.

"difficulties" with respect to concentration, persistence, or pace, no assessment was provided as to whether the difficulties were mild, moderate, or marked.   Third, Dr. deJesus's findings were unsupported by references to clinical notes or other records.   The ALJ reviewed the clinical notes and found that they contradicted Dr. deJesus's assessment of marked limitations. (T at 26).   At the conclusion of the hearing, the ALJ granted a request by Plaintiff's counsel for additional time to procure further information from Dr. deJesus. (T at 398-399).   The ALJ thereafter sent a letter to Plaintiff's counsel reminding him of this issue and granting, *sua sponte*, further time to obtain the information, but received no response. (T at 26, 59).

In light of the foregoing, this Court finds no error in the ALJ's decision not to afford controlling weight to Dr. deJesus's assessment and further finds that substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal §12.04 of the Listings.

### b.    Section 12.05

Plaintiff points to the IQ testing performed in June 2005, which indicated that she had a full scale IQ of 70.  (T at 280).  Plaintiff argues that the ALJ should have considered whether her limited intellectual ability, when combined with her mental illness, imposed disabling limitations.   Although not specifically raised in Plaintiff's papers, this Court is troubled by the ALJ's determination that Plaintiff's impairments did not meet or medically equal the requirements of § 12.05 of the Listings.

The ALJ concluded that "the 'paragraph C' criteria of listing 12.05 [had not been] met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and

significant work-related limitation of function." (T at 27).  However, as noted, Plaintiff does have a full scale IQ in the 60 to 70 range (T at 280) and the ALJ did not suggest that this score was invalid.

The second prong of Subsection "C" requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  The ALJ evidently found that this requirement had not been met, but provided no further explanation to justify her decision.

The courts have been divided concerning the proper test for evaluating whether a claimant's impairment imposes "an additional and significant work-related limitation of function" and the Second Circuit has not ruled on this issue. Compare Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir.1997) (adopting the severity test discussed below) with Flowers v. U.S. Dep't of Health & Human Servs., 904 F.2d 211, 214 (4th Cir.1990) (requiring claimant to be unable to perform his or her prior work to show the required additional and significant limitation).

However, revisions to paragraph 12.00A have clarified the additional limitation requirement of Subsection "C" of §12.05. See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50,746-01, 50,772 (August 21, 2000) ("We always have intended the phrase to mean that the other impairment is a 'severe' impairment, as defined in §§ 404.1520(c) and 416.920(c).").

The Regulations now direct an ALJ to "assess the degree of functional limitation the additional impairment[ ] imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a "severe" impairment[ ], as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A).

14

Thus, the Regulations indicate that the proper test for evaluating an impairment, other than low IQ, under Subsection "C" of §12.05 is the same test used at step two of the sequential evaluation to determine whether an impairment is "severe." See 20 C.F.R. §§ 404.1520(c), 416.920(c); accord Baneky v. Apfel, 997 F.Supp. 543, 546 (S.D.N.Y.1998) ( "This Court holds that the correct standard for determining whether an "additional" impairment imposes a "significant" work-related limitation under section 12.05(c) is the severity test ..."). Given the ALJ's finding that Plaintiff's mood disorder was a "severe" impairment, this Court believes that the second prong may have been satisfied in this case.

Under similar circumstances, courts in this Circuit have generally determined that remand is the appropriate remedy to permit the Commission to evaluate the evidence in light of the proper legal standard. See Antonetti v. Barnhart, 399 F. Supp.2d 199, 203 (W.D.N.Y. 2005)("When there is a question whether the Commissioner correctly applied the criteria set forth in the second prong of Section 12.05C, courts in this circuit generally remand the case for further evaluation of the evidence.")(collecting cases); see also Baneky, 997 F.Supp. at 546; Aviles v. Barnhart, No. 02-CV-4252, 2004 WL 1146055, at *7 (E.D.N.Y. May 11, 2004). This Court likewise recommends that this case be remanded to the Commissioner for a specific determination as to whether any of Plaintiff's limitations, except for her low IQ, satisfy the second element of Listing §12.05(C).

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant

15

to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 15, 2010

Syracuse, New York

## V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

16

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 15, 2010

Victor E. Bianchini
United States Magistrate Judge